**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| PATRICE SMITH,<br><br>Plaintiff,<br><br>v.<br><br>VALDOSTA BOARD OF EDUCATION, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO.: 7:26-CV-127-WLS |

**ORDER**

Before the Court is Plaintiff Patrice Smith's amended complaint. (Doc. 4.) The Court previously granted Smith's application to proceed *in forma pauperis*, triggering the Court's duty to review the complaint's validity. *See* 28 U.S.C. § 1915(e)(2). Because Smith's original complaint failed to state a claim upon which relief may be granted, the Court ordered her to file an amended complaint. (Doc. 3.) Smith has now filed an amended complaint, which the Court again reviews under § 1915(e)(2).

## I. LEGAL STANDARD

Because the Court has already found that Smith meets § 1915's poverty requirements, the Court proceeds to review the amended complaint's validity. The Court must dismiss a complaint that (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against defendants who are immune from such relief. 28 U.S.C. 1915(e)(2)(B); *see Watkins v. Joy*, 782 F. App'x 892, 893 (11th Cir. 2019) ("A district court is obligated to dismiss an in forma pauperis complaint if it determines that the action fails to state a claim on which relief may be granted." (internal quotation marks omitted)).

In reviewing the merits of the amended complaint, the Court accepts all factual allegations as true. *Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003); *Watkins*, 782 F. App'x at 895 (citing *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008)). The Court construes the complaint liberally because it is brought pro se. *Tannenbaum v. United States*, 148

F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). This leniency does not, however, afford Smith "special advantages not bestowed on other litigants." *Procup v. Strickland*, 760 F.2d 1107, 1115 (11th Cir. 1985), *vacated on reh'g en banc*, 792 F.2d 1089 (11th Cir. 1986). Nor does it excuse her from obeying all local and procedural rules, including those governing pleadings. *Id.* The Court will not act as a pro se litigant's lawyer, *Jarzynka v. St. Thomas Univ. of L.*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004), nor will it rewrite or "fill in the blanks" of a defective pleading. *See Brinson v. Colon*, No. CV411-254, 2012 WL 1028878, at *1 (S.D. Ga. Mar. 26, 2012), *report and recommendation adopted*, No. CV411-254, 2012 WL 1255255 (S.D. Ga. Apr. 13, 2012).

Smith must therefore comply with Federal Rule of Civil Procedure 8, which requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although a complaint need not contain "detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Similarly, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alterations in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also McDowell v. Gonzalez*, 424 F. Supp. 3d 1214, 1220 (S.D. Fla. 2019) (so stating).

## II. ALLEGATIONS

For the purposes of its review, the Court accepts the following allegations as true. Smith was a Valdosta City School District employee for about 16 years. (Doc. 4 ¶ 1.) Her primary job function was to work with students with special needs and to help students with credit recovery. (*Id.* ¶ 3.) Smith regularly worked with students virtually while stationed at the school campus. (*Id.*) On April 17, 2019, Smith "received a head injury from a steel door kicked open by a student." (*Id.* ¶ 2.) Smith suffered multiple injuries requiring continual treatment.

(*Id.*) Smith's doctor provided her with a formal report explaining her limitations and required accommodations. (*Id.*) Smith shared this report with Human Resources Director Owen Clemmons. (*Id.*) Clemmons submitted the report's information to the assistant principal, nurse, and benefits department. (*Id.*) Smith then began requesting a change in her position to accommodate her job limitations. (*Id.* ¶ 4.) Smith asked to transition to remote work and continue her virtual duties. (*Id.*) Clemmons told Smith that the school district had no positions available that could accommodate her needs. (*Id.*) Smith then went on short-term disability leave, which covered only half her usual salary. (*Id.*)

During the COVID-19 pandemic in 2020, the school district shifted all staff to remote work. (*Id.* ¶ 5.) Smith again asked if she could take on a virtual position so that she could return to full-time work. (*Id.*) She was again told that there were no roles available on her team and her student caseload was distributed among other teachers. (*Id.*)

Smith is also "a successful transplant patient who could not be exposed to COVID for health reasons." (*Id.* ¶ 6.) After the pandemic, Smith's "position was changed to a community role assigned to daycare students." (*Id.*) Although she initially objected because of the risk of coronavirus exposure, she ultimately accepted the role without accommodations to protect her health or to adhere to her doctor's recommendations. (*Id.*) During and after the pandemic, the school board "posted and advertised five different positions that were remote or that did not require direct contact with students." (*Id.* ¶ 7.) Smith applied for all five positions but was rejected for each one. (*Id.*)

On May 9, 2023, Hudson and Clemmons sent Smith a non-renewal letter. (*Id.* ¶ 5.) The following month, however, Clemmons verbally rescinded the letter but never sent Smith a written confirmation. (*Id.* ¶ 11.) Smith continued to access her benefits and pay her insurance premiums for over a year. (*Id.*) On November 3, 2024, Smith met with the new assistant superintendent, Tret Witherspoon, and the new human resources manager, Jennifer Alvarez. (*Id.* ¶ 14.) Alvarez told Smith that she "found a letter in [her] file and was going to pursue the dismissal." (*Id.* ¶ 15.) Alvarez stated that the dismissal was effective immediately and that Smith's insurance coverage would be cancelled. (*Id.*) Three days later, Alvarez contacted Smith and confirmed that she was pursuing the dismissal. (*Id.* ¶ 17.) In early 2025, Smith was denied

insurance coverage. (*Id.* ¶ 18.) When she called the State Health Benefit Plan to inquire about her coverage, she learned that her insurance had expired on December 31, 2024. (*Id.*)

Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 5, 2025. (*Id.* ¶ 19.) The EEOC issued her a right-to-sue letter on January 22, 2026. (Doc. 4-1.)

## III. ANALYSIS

Smith states that the federal statutes applicable to her claims are 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 § 102, 42 U.S.C. § 12112 (the "ADA"). The Court addresses each cause of action in turn.

### A. Smith's ADA Claim

Although the amended complaint mentions the ADA claim only in broad terms, the Court construes pro se complaints liberally. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). The Court therefore assumes that Smith is bringing a disability discrimination claim under a failure to accommodate theory.

#### *1. The Timeliness of the Complaint*

Based on Smith's allegations, her termination date was November 3, 2024—the date Alvarez told her that she was terminated. The date of the initial non-renewal notice does not count as Smith's termination date because the notice was rescinded. And because Smith filed her EEOC charge on March 5, 2025—which is within the 180-period—her EEOC charge was timely. *See* 42 U.S.C. § 12117(a) (incorporating the 180-day charge filing deadline set forth in 42 U.S.C. § 2000e-5(e)(1)). But this lawsuit might still have been untimely.

A plaintiff has 90 days from the date she *receives* the right-to-sue notice to file a lawsuit based on the EEOC charge. 42 U.S.C. § 12117(a) (incorporating the 90-day civil action filing deadline set forth in 42 U.S.C. § 2000e-5(f)(1)). The date of receipt depends on how the notice was delivered. When the EEOC mails a right-to-sue notice, the receipt date that starts the 90-day period is the date the plaintiff receives the letter. *Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863, 867 (11th Cir. 2020) (citing *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005)). Absent evidence that the mailed notice "was delayed through no fault of the plaintiff, the court should presume the mailing was received three days after its issuance." *Davidson v. Hyundai*

*Transys Ga. Seating Sys., LLC*, 833 F. Supp. 3d 1296, 1303 (M.D. Ala. 2026) (citing *Kerr*, 427 F.3d at 953 n.9). But when the EEOC emails a right-to-sue notice, the date that starts the 90-day filing window is the date the email is delivered. *Id.* at 1303 (citing *Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021); *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1071 (8th Cir. 2024)).

The EEOC issued the right-to-sue notice on January 22, 2026, and Smith filed her complaint on April 27, 2026. (Doc. 4 ¶ 19; Doc. 1.) But it is unclear whether the EEOC sent the notice by mail or email. If the EEOC sent the notice by email, the 90-day filing deadline was April 22, 2026, and the complaint is untimely. If it sent the notice by mail, three days are added and the filing deadline was April 25, 2026. But because April 25, 2026, was a Saturday, the period continued to run until Monday, April 27, 2026. *See* Fed. R. Civ. P. 6(a)(1)(C). Thus, if the notice was sent by email, Smith's complaint was untimely, but if it was sent by mail, the complaint was timely.

Although Smith's lawsuit might be untimely, the ADA charge-filing requirement and the 90-day right-to-sue limitation are not jurisdictional. *Cf. Fort Bend Cnty. v. Davis*, 587 U.S. 541, 550 (2019) ("Title VII's charge-filing requirement is not of jurisdictional cast.") Thus, at this stage, the claim's untimeliness does not mandate dismissal. But if the ADA claim was untimely, it will be vulnerable to an affirmative defense. That is, if the defendants contest the complaint's timeliness, Smith will bear the burden of showing that she timely commenced this action or that the time limit may be tolled. *See Kerr*, 427 F.3d at 951.

### *2. Whether the Amended Complaint States a Claim under the ADA*

"To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, she (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of her disability."[1] *Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018) (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007)). The amended complaint does not establish the first two elements.

[1] As it pertains to this case, Smith may establish the third prong by showing that her employer failed to provide her with reasonable accommodation for her disability. *See Batson*, 897 F.3d at 1326 (citing *Holly*, 492 F.3d at 1262).

To establish that she had a disability, Smith must plead facts sufficient to show that she had "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) [was] regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). Smith's amended complaint does not establish that she meets any of these three definitions. First, the amended complaint states only that Smith "received a head injury from a steel door kicked open by a student," that she "suffered multiple injuries requiring continual treatment," and that she reported her limitations to her employer. (Doc. 4 ¶ 2.) The fact that Smith received an injury that required ongoing care does not show that she had an impairment that substantially limited any major life activities, let alone that such an impairment required any accommodations.[2] Second, because she has not shown that she had an impairment that limited one or more major life activities, she has not shown a record of such an impairment. Finally, Smith has not shown that she was regarded as having such an impairment. The amended complaint does show that Smith suffered an adverse employment action because she was *perceived* as having a disability.

As for the second prong, the amended complaint also does not show that Smith was a "qualified individual." For purposes of the ADA, "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In her amended complaint, Smith alleges "[d]uring and after the pandemic, the School Board posted and advertised five different positions that were remote or that did not require direct contact with students." (Doc. 4 ¶ 7.) Smith alleges that she applied for all five positions but received none of them. (*Id.*) But Smith does not plead any facts showing that she was qualified for any of these positions.

Because the amended complaint does not allege facts establishing the first or second elements of a disability discrimination claim, it fails to state such a claim.

---

[2] Smith's acceptance of the Board's alternative position without accommodations suggests that she did not require them. (Doc. 4 ¶ 6.)

**B. Smith's § 1983 Claim**

Section 1983 provides an individual with a private right of action against state officials who, under color of state law, deprive her of a federal constitutional right. 42 U.S.C. § 1983. Although the amended complaint does not allege what constitutional right was violated, Smith appears to have attempted in her original complaint to bring a § 1983 claim for violation of her Fourteenth Amendment rights. (Doc. 1 at 6.) But even assuming that Smith is suing under § 1983 to vindicate her Fourteenth Amendment rights, she does not allege what right the defendants violated. (*See* Doc. 4.) Based on her allegations concerning school board policy, however, Smith appears to be asserting that she was denied procedural due process.[3] (*Id.* ¶¶ 8–9, 15, 17.) Smith alleges that under the school board's policy, she was "entitled to a reason for termination and a right to appeal before final termination." (*Id.* ¶ 8.) But this is not enough to show a procedural due process violation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Smith's amended complaint alleges only that the school board did not follow its own termination procedures. That does not itself show that Smith had a property interest in continued employment. To demonstrate such a property interest, Smith must show that the school board's discretion to discharge her was restricted. *See Green v. City of Hamilton, Hous. Auth.*, 937 F.2d 1561, 1564 (11th Cir. 1991). A public employer's direction to discharge an employee is restricted when a state law or local ordinance limits its power to dismiss. *Ross v. Clayton Cnty.*, 173 F.2d 1305, 1307 (11th Cir. 1999). "An employer's discretion to terminate a public employee also may be limited if it agreed in a contract that the employee could be dismissed for certain reasons only." *Harris v. Monroe Cnty. Pub. Libr. Bd. of Trs.*, No. 22-11236, 2023 WL 6866602, at *4 (11th Cir.

---

[3] In its previous Order, the Court concluded that Smith's § 1983 claim was untimely because she did not bring it within two years of receiving her non-renewal letter on May 9, 2023. (Doc. 3 at 4.) But as pleaded in the amended complaint, Smith's dismissal date was November 3, 2024. (Doc. 4 ¶¶ 14–15.) Because Smith filed her complaint on April 27, 2026, she brought her § 1983 within the applicable two-year statute of limitations. *See Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996).

Oct. 18, 2023) (citing *Green*, 937 F.2d at 1564). The amended complaint includes no allegations that show that the school board's discretion to discharge her employment was restrained. It therefore fails to state a § 1983 claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, Smith's amended complaint fails to state a claim upon which relief may be granted. If Smith wishes to proceed with her action, the Court will afford her one last opportunity. She is therefore **ORDERED** to file an amended complaint within **twenty-one days** of the entry of this order, or by no later than **Wednesday, October 28, 2026**.

**SO ORDERED**, this 7th day of October, 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**